IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT CORSNITZ and GWENDOLYN CORSNITZ,** | : | **Civil No. 22-cv-1363** |
| **Plaintiffs,** | : | |
| v. | : | |
| **COMMONWEALTH OF PENNYSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, et. al.,** | : | **Judge Sylvia H. Rambo** |
| **Defendants.** | : | |

# M E M O R A N D U M

Before the court is a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim filed by the Commonwealth of Pennsylvania Department of Environmental Protection ("DEP"), as well as individual Defendants Andrea Blosser, Ron Ebert, Derek Enders, Felicia Lamphere, and Scott Williamson. (Doc. 5.) For the reasons set forth below, all claims against DEP and individual defendants in their official capacity will be dismissed with prejudice and claims seeking declaratory and injunctive relief against individual defendants in their official capacity will be dismissed without prejudice.

I. **BACKGROUND**

Plaintiffs Scott and Gwendolyn Corsnitz have brought this case to federal court seeking to revisit seven years of unsuccessful state litigation upholding an administrative order that declared their land use activities illegal. The following facts are derived from Plaintiffs' complaint and the administrative record.[1]

Plaintiffs own a 72-acre parcel of land ("the Site") in Halifax Township, Dauphin County. (Doc. 1 ¶¶ 11-12; Doc. 18-3 ¶¶ 3, 5.) Years ago, they developed a remediation plan to fill in and level a 1200-square-foot portion of the Site to increase its available cropland. (Doc 1. ¶ 13.) Plaintiffs worked together with the township, the Dauphin County Conservation District, the Pennsylvania Department of Transportation, and the Natural Resources Conservation Service, to develop and effectuate the plan. (*Id.* ¶¶ 14-16, 18-19.)

On May 9, 2014, DEP received a confidential complaint alleging that earth disturbance activities were occurring at the Site. (*Id.* ¶ 22; Doc. 18-3 ¶ 6.) Individuals working for DEP went to the Site to investigate the complaint on June 3, 2015, and observed evidence of unauthorized fill and excavation activities. (Doc. 1 ¶ 24; Doc. 18-2 ¶ G.) During the visit, Plaintiffs observed an individual associated with DEP

---

[1] The court takes judicial notice of portions of the undisputedly authentic administrative record and underlying state court decisions attached to Defendants' brief in support of their motion to dismiss. (Doc. 18.) *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

2

walking through Plaintiffs' crops despite seven posted "No Trespassing" signs. (Doc. 1 ¶ 24.) Thereafter, individuals associated with DEP, acting in their official capacity, including Defendants Lamphere, Ebert, Blosser, Williamson, and Enders entered the land at least three more times without notice or permission. (Doc. 1 ¶ 26.)

On February 3, 2016, these individual defendants issued, or at least assisted in issuing, a formal Administrative Order ("AO"), asserting that Plaintiffs' earth disturbance activities had violated various state laws, including the Dam Safety and Encroachments Act, The Clean Streams Law, and Chapter 105 of the Pennsylvania Code. (Doc. 18-2 p. 1.) The AO stated, in pertinent part:

> On June 3, 2015, the Department conducted an initial inspection of the Site in response to the complaint . . . to assess whether any potential violations had occurred. Evidence of fill and excavation activities in potential wetlands on the south side of Camp Hebron Road was observed. Later that day, the Department left a voice mail message for Mr. Scott A. Cornitz ("Mr. Corsnitz") requesting that he refrain from conducting additional fill and excavation activities on the Site until the Department could conduct a more thorough assessment of it.
>
> Inspections of the Site by the Department on July 28, 2015; July 29, 2015; July 31, 2015; August 6, 2015; and October 8, 2015 determined that Corsnitz placed soil and other material, constituting "fill" as the term is defined in 25 Pa. § 105.1, in wetlands on both the north and south sides of Camp Hebron Road without first obtaining a permit. Mr. Corsnitz was present for the Department's July 31, 2015; August 6, 2015; and October 8, 2015 inspections of the Site.

(*Id*. 18-2 ¶¶ G-H.) The AO directed Plaintiffs to comply with a variety of remediation efforts related to the Site, including to:

3

> cease all fill and excavation activities . . . . submit a current Agricultural Erosion and Sediment Control Plan . . . . develop and submit a restoration plan ("Restoration Plan") prepared by a qualified environmental professional to the Department for review and approval that details how the impacted wetlands . . . will be restored to pre-disturbance conditions.

(*Id.* ¶¶ a.-c.) Finally, the AO provided Plaintiffs thirty days to appeal the action. (*Id.* p. 5.)

Plaintiffs timely appealed the AO to the Pennsylvania Environmental Hearing Board ("EHB") on March 2, 2016. (Doc. 18-5 ¶ 22.) On March 21, 2017, the board held a hearing on Plaintiffs' appeal, and, on February 23, 2018, it issued an Adjudication and Order finding that the AO "was a reasonable, necessary and lawful exercise of the Department's discretion." (Doc. 18-3 p. 31.)

On March 28, 2018, Plaintiffs filed a Petition for Review of the EHB's Adjudication and Order with the Commonwealth Court of Pennsylvania. (Doc. 18-4 p. 3.) On January 4, 2019, the Commonwealth Court quashed Plaintiffs' petition as untimely in a seven-page memorandum opinion. (*Id.* p. 4.) It explained that because the petition was filed thirty-three days after the EHB's order, or three days after the thirty-day deadline to appeal, it was untimely. *See Corsnitz v. Dep't of Env't Prot.*, No. 450 C.D. 2018, 2019 WL 98161, at *1-2. (Pa. Commw. Ct. Jan. 4, 2019) ("This Court may not extend the appeal period as a matter of grace or indulgence; untimeliness of an appeal deprives this Court of jurisdiction.").

4

On February 4, 2019, Plaintiffs filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on August 6, 2019. (Doc. 18-4 p. 5.) Despite exhausting administrative and state court remedies, Plaintiffs nonetheless failed to comply with DEP's AO and thus, in early 2021, DEP sought a petition to enforce the AO against Plaintiffs in the Commonwealth Court. (*See generally* Doc. 18-5.) On March 4, 2022, the Commonwealth Court issued an order, which substantially mirrored the ameliorative requirements described in the AO and ordered Plaintiffs to pay a fine of $100.00 per day for each day they failed to comply with the order. (*Id.* pp. 12-13.) Plaintiffs again appealed, but their appeal was denied by the Pennsylvania Supreme Court on August 2, 2022. (Doc. 18-5 p. 3.) On August 16, 2022, Plaintiffs filed a motion for reconsideration, which was also denied.

On September 1, 2022, Plaintiffs filed their complaint in this court. (Doc. 1 p. 1.) Relying on the exception to sovereign immunity established in *Ex Parte Young*, Plaintiffs seek a declaration that the actions of DEP and its officials amounted to an unconstitutional trespass and taking of property and request an injunction prohibiting Defendants from all enforcement actions related to the Site. (Counts I and II). Plaintiffs also assert several claims under 42 U.S.C. § 1983 against the DEP and its officials for money damages for allegedly violating Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments as well as various Pennsylvania laws. (Count III).

Defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] The motion is fully briefed and ripe for review.

## II. **STANDARD OF REVIEW**

"It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto." *Employers Ins. of Wausau v. Crown Cork & Seal, Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1999). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F.Supp.2d 532, 537 (M.D. Pa. 2002) (quoting *Ballenger v. Applied Digital Solutions, Inc.*, 189 F.Supp.2d 196, 199 (D. Del. 2002)). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] While Defendants' motion also requests dismissal under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, their supporting brief only seeks dismissal under Rules 12(b)(1) and 12(b)(6) and fails to address any deficiencies in service of process. As such, the court will treat Defendants' motion to dismiss only as one under Rules 12(b)(1) and 12(b)(6).

(2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, [the court] 'accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.  DISCUSSION

A. <u>Plaintiffs' claims for money damages are barred by sovereign immunity</u>.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In interpreting this amendment, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974) (citations omitted). An agency of state government is considered a part of the state for Eleventh Amendment purposes. *See Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought."). Sovereign immunity also shields suits against individuals in their official capacity for money damages as those are "in all respects other than name, to be treated as a suit against the entity." *Ky. v. Graham*, 473 U.S. 159, 166 (1985).

"Because DEP is a state agency and an arm of the state, and because Pennsylvania has not waived its sovereign immunity in this instance, none of Plaintiff's claims against DEP can proceed in federal court." *M & M Stone Co. v. Pennsylvania, Dep't of Env't Prot.*, No. 07-CV-04784, 2008 WL 4467176, at *15

(E.D. Pa. Sept. 29, 2008). All of Plaintiffs claims against DEP must be dismissed with prejudice. Plaintiffs' claims against the individual defendants are similarly barred by sovereign immunity. While §1983 permits individual-capacity actions against state officials, under the Eleventh Amendment official capacity suits are barred. *Mangan v. Brierre*, 257 F. App'x 525, 528 (3d Cir. 2007) (finding that sovereign immunity precludes § 1983 action against the DEP defendants in their official capacities) (citing *Callahan v. City of Phila.,* 207 F.3d 668 (3d Cir. 2000)); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71(1989). Because Plaintiffs' claims are asserted against the individually-named defendants in their official capacity (*see* Doc. 1 ¶¶ 26, 31; Doc. 21 pp. 4, 5), these claims will also be dismissed with prejudice.[3]

   B. <u>Plaintiffs' claims for declaratory and injunctive relief do not fit within the *Ex Parte Young* exception to sovereign immunity</u>.

Plaintiffs also seek to enjoin the individual Defendants from all enforcement actions related to the Site and to obtain a declaration that "Defendants' enforcement action has been pre-empted by federal law and constitutes a taking." (Doc. 7 ¶¶ 46,

---

[3] The court similarly lacks jurisdiction over any claims related to Defendants' apparent violations of the Pennsylvania Constitution or state law. *See Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 120 (1984); *Taylor v. Motions Unit Clerk of Cts.*, No. 22-3028, 2023 WL 418061, at *1 (3d Cir. Jan. 26, 2023) ("This [Eleventh Amendment] immunity extends to . . . pendent state-law claims as well.").

53.) Plaintiffs argue that they had permission from local, state, and federal authorities to fill in portions of their land, and that this consent pre-empted state officials from enforcing state law and issuing the AO.

Under *Ex Parte Young* and its progeny, actions seeking injunctive or declaratory relief against officials in their official capacity are permissible because "an unconstitutional state enactment is void and [therefore] any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023). Only prospective relief is permitted because "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law," whereas "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

A recent Third Circuit decision is instructive here. In *Merrits*, a landowner brought a §1983 claim against PennDOT employees who effectuated eminent domain proceedings to create an easement on his land. 62 F.4th 764. The landowner sought to enjoin the officials "from claiming ownership to his land; from physically intruding onto the land; from denying him just compensation; and from otherwise interfering with his property rights. Plaintiff also [sought] a declaratory judgment that his federal constitutional rights had been violated." *Id.* at 771. In finding that the *Ex Parte Young* doctrine did not apply, the Third Circuit explained that, despite characterizing the relief as prospective, the landowner sought relief "based on two claimed past violations of federal law: acquiring the easements without justification and not providing just compensation." *Id.* at 772. In other words, he sought a reparative injunction focused on restoring a preexisting entitlement. *Id.* (citing Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies* § 2.9(1) (3d ed. 2018)).

Here, Plaintiffs' requests for declaratory and injunctive relief suffer from similar deficiencies. They assert that the alleged constitutional violations stem from individual DEP officials trespassing on their land in the summer of 2015 and issuing the 2016 order that was subsequently upheld. (Doc. 1 ¶¶ 24, 26.) While Plaintiffs' complaint weaves in some language about enjoining the future enforcement actions of Defendants, all Defendants in this case are merely lumped together, and nothing in the complaint suggests that the individuals who apparently investigated Plaintiffs'

11

infractions and contributed to the 2016 AO are the individuals that this court could enjoin from its future enforcement. It is apparent that Plaintiffs seek to have their rights restored to the position they had prior to DEP's enforcement activity, that is, to retain the right to fill in portions of their land. This is plainly a reparative injunction, one that is not permitted under *Ex Parte Young*. *Id.* at 772; *see Fehr v. Callahan*, No. 3:21-cv-11146, 2023 WL 3180314, at *3 (D.N.J. Apr. 29, 2023) ("That Plaintiff suffers some ongoing consequences from those completed violations . . . does not change the fact that the violations of federal law alleged in this case were completed prior to the filing of the amended complaint.").

As the *Ex parte Young* exception does not apply, the five individual Defendants, named in their official capacities only, will be dismissed from this matter as they are entitled to Eleventh Amendment immunity. However, out of an abundance of caution, and because Eleventh Amendment immunity is a non-merits threshold issue, the court will dismiss all claims for declaratory and injunctive relief against individuals acting in their official capacity without prejudice. 62 F. 4th 764 n. 4.

### IV.   CONCLUSION

For the reasons set forth above, defendant's motion to dismiss under 12(b)(1) will be granted.[4] An appropriate order shall follow.

        /s/Sylvia H. Rambo
        SYLVIA H. RAMBO
        United States District Judge

Dated: March 26, 2024

---

[4] Because of the court has dismissed the case on non-merits grounds, the court at this time will not evaluate the potential applicability of the various abstention doctrines Defendants urge the court to apply. (*See generally* Doc. 18.)